## COMMONWEALTH *vs.* NAPOLEON J. RIVET.

Middlesex.    March 7, 1910. — May 16, 1910.

Present : KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Homicide. Evidence,* Of motive, Competent for limited purpose, Of habits and character, Remoteness. *Practice, Criminal,* Exceptions.

At the trial of an indictment for murder, where the motive for the commission of the crime relied on by the Commonwealth is the collection by the defendant of the amount named in a policy of insurance upon the life of the deceased, which was held by the defendant as security for a debt owed to him by the deceased, the Commonwealth may show that the defendant understood what a life insurance policy meant, and for that purpose may introduce evidence, which otherwise would be incompetent, that in the year before the alleged murder the defendant had made an application to a beneficiary organization of which he was a member for sick benefits during ten weeks.

In a criminal case where the Commonwealth, for the purpose of showing a motive of the defendant for the commission of the crime, introduces evidence which except to show such motive would be incompetent, if the defendant wishes to have the jury instructed that the evidence is competent only for the limited purpose for which it has been admitted, he must ask for such an instruction. If he fails to do so, he afterwards cannot complain because no such instruction limiting the effect of the evidence was given.

At the trial of an indictment for murder, where the defendant's counsel disclaims having any evidence that the defendant knew of the character of the deceased and also disclaims offering evidence to show that the killing was done in self defense, it is proper to exclude evidence offered by the defendant to show that the habits and character of the deceased were such that he would be likely to have come to his death by having got into a fight when drunk.

In a criminal case, as in a civil one, the fact that a person did an act cannot be proved by evidence that his habits were such that he would have been likely to

do it, and this rule applies to evidence offered by a defendant as much as to
evidence offered by the prosecution.

At the trial of an indictment for murder it appeared that the defendant passed the
night of the day when the deceased was killed at the house of the defendant's
brother in law, that the next morning as the family were about to sit down to
breakfast a neighbor came in and told them that the deceased had been killed
and that his body was at the undertaker's, that the brother in law said, "Let us
go and see him," and that the brother in law's wife said, "It is better to have
breakfast and go to church; it is too late." It also appeared that there was one
church service at 8.30 A. M. and another at 10.30 A. M. and that the defendant
attended the service at 8.30 A. M. The defendant offered evidence that the seats
at the 8.30 service were free while the 10.30 service was "for those who had
seats or pews." The evidence was excluded against the exception of the de-
fendant. In answer to an inquiry of the presiding judges the defendant's coun-
sel stated that he did not contend that the fact that the seats were free at the
8.30 service was given by the defendant as a reason why he "did not go with
the others to see the body immediately instead of going to church." *Held*, that
under the circumstances the evidence was excluded properly as too remote.

INDICTMENT, found and returned on June 5, 1908, charging
the defendant with murdering one Joseph Gailloux at Lowell on
February 29, 1908.

In the Superior Court the defendant was tried before *Harris*
and *Hitchcock*, JJ. The jury returned a verdict of guilty of
murder in the first degree; and the defendant alleged excep-
tions, raising the questions which are stated in the opinion as
well as others which were waived or were not argued by the
defendant.

*W. H. Bent*, for the defendant.

*J. J. Higgins*, District Attorney, for the Commonwealth.

LORING, J. 1. Had there been no question as to the compre-
hension by this defendant of what a life insurance policy is, the
evidence that he had made an application to a beneficiary organ-
ization of which he was a member for sick benefits for ten weeks
during January, February, March and April, 1907, would not
have been competent. The motive relied on by the Common-
wealth was the intention to collect the amount of the policy on
the life of the deceased, pledged to the defendant as security for
a debt owed to him by the deceased. If the defendant in fact
did not know what a life policy was and what rights he had as
pledgee of the policy on the life of the deceased, the Common-
wealth had not made out its case so far as the motive relied
upon by it was concerned. We cannot say that there was error

in allowing the district attorney to prove that this defendant, who seems to have been a foreigner, understood what a life insurance policy means. The burden is on the excepting party to show error. *Jones* v. *Smith,* 121 Mass. 15.

If the defendant had wished to have the jury instructed that the evidence was admissible only for the limited purpose for which it was competent, he should have asked for such an instruction. *Howe* v. *Ray,* 113 Mass. 88.

2. Two exceptions to the exclusion of evidence have been argued together. One of these was to the exclusion of evidence that on one occasion, late in the autumn previous to the murder, the deceased had been found in Daigle's shop, late at night, dead drunk. The other exception was to the exclusion of evidence that the deceased was frequently in fights when he was intoxicated; that he was frequently seen with his face all battered up in some contest he had had, and that he had been seen within a year before his death " with a swollen face, black eyes [and] battered face generally."

On inquiry the defendant's counsel disclaimed having evidence that the defendant knew of the character of the deceased. He also disclaimed offering this evidence to show that the killing here in question was done in self defense. The case therefore does not come within *Commonwealth* v. *Tircinski,* 189 Mass. 257.

The defendant's argument in support of this exception is that this was evidence from which the jury could infer that the deceased came to his death by having got into a fight when drunk. The fact that a person's habits or character are such that he would be apt to do an act is not competent evidence that he did the act. Nothing is better settled than that. *Commonwealth* v. *Worcester,* 3 Pick. 461. *Ellis* v. *Short,* 21 Pick. 142. *Tenney* v. *Tuttle,* 1 Allen, 185. *Heland* v. *Lowell,* 3 Allen, 407. *McCarty* v. *Leary,* 118 Mass. 509. *Menard* v. *Boston & Maine Railroad,* 150 Mass. 386. *Geary* v. *Stevenson,* 169 Mass. 23. *Edwards* v. *Worcester,* 172 Mass. 104. *The King* v. *Fisher,* [1910] 1 K. B. 149.

There is no difference between the usual case where evidence of this character is offered by the prosecution to prove that the defendant did the act he is charged with doing and the case at bar where evidence was offered by the defendant to prove that

the deceased did the act in question and thereby to show that the defendant did not do it.   Doing an act cannot be proved in either case by evidence that from the habits of the person in question he would be apt to do it.

3.  The defendant passed the night in question at the house of his brother in law.  There was evidence that as they were about to sit down to breakfast the next morning a neighbor came in and told them that Gailloux had been killed and that his body was at the undertaker's; and that the brother in law said, "Let us go and see him," and the brother in law's wife said, "It is better to have breakfast and go to church; it is too late." It also appeared that there was one church service at 8.30 and another at 10.30 A. M. and that the defendant attended the service at 8.30 A. M.   The defendant took an exception to the exclusion of evidence that seats at the 8.30 service were free while the 10.30 service was "for those who had seats or pews." On inquiry the defendant's counsel stated that he did not contend that this was given by him (Rivet) as a reason "why Rivet did not go with the others to see the body immediately instead of going to church." Under those circumstances the evidence was too remote.

We have read all the cases cited by the defendant and find nothing in them that helps him here.

4.  The other exceptions were either expressly waived or were not argued, and for that reason we treat them as waived.   We desire to add, however, that we have examined them and that we find no error.

The entry must be

*Exceptions overruled.*