COMMONWEALTH *vs.* FRANCISCO FECI.

Middlesex.    March 29, 1920. — May 18, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Homicide.    Evidence,* Of motive. *Practice, Criminal,* Exceptions.

Although the Commonwealth is not obliged in any case to prove a motive for the committing of the crime of murder, evidence tending to show a motive always is competent because, if clearly shown, it may help to confirm the conclusion, reached upon all the other evidence, that the accused committed the crime charged.

At the trial of an indictment for murder, there was evidence tending to show that the deceased was employed in the reclamation department of a railroad corporation and lived alone in a small house on a country road in a sparsely settled district; that near his house there was a path, which crossed wooded land near a swamp to railroad tracks and which the deceased frequently used to go to and from his work; that a companion of the defendant, also indicted for the same murder, owned a house near that of the deceased on the same country road and that a path ran from near his house and joined that running by the swamp to the railroad; that the defendant and his companion had been employed in building a culvert near the reclamation department of the railroad corporation; that two days before the murder the defendant and his companion went with a junk dealer by way of the path by the swamp and another path to a hole in the swamp where they exhibited to him a lot of brass journal boxes which they sought to have him purchase. The Commonwealth, subject to exceptions by the defendant, was permitted to introduce testimony of the foreman under whom the deceased had worked, that on the day when the defendant interviewed the junk dealer the deceased and the foreman had a conversation in consequence of which they went from the railroad tracks up the path toward the house of the deceased; that they had gone about forty feet along the path when the foreman saw the defendant with a shotgun in his hand cross the path ahead of him; that he waved his hand to the defendant and shouted to him; that the defendant saw them and ran away; that the deceased led the foreman to the hole in

the swamp, where the foreman saw a large quantity of brass junk which he identified by marks as property of the railroad corporation, and that previous to that date brass junk wrongfully had been taken from the corporation. The deceased was killed two days later by revolver shots and knife wounds. There was other evidence that the defendant committed the deed. *Held,* that

(1) The testimony that the deceased and the foreman had a conversation merely referred to a relevant fact and was competent;

(2) The further testimony of the foreman was competent as tending to show that the secreted brass junk was stolen property;

(3) Taken in connection with the evidence as to the defendant's negotiations with the junk dealer, the testimony of the foreman tended to show that the defendant had stolen the junk and had secreted it;

(4) The testimony of the foreman was admissible as tending to show a motive for the crime.

While a defendant indicted for a crime is not to be convicted by evidence that he previously had committed other crimes wholly disconnected with that charged and such evidence should be excluded, yet, if it be shown that the defendant has committed other crimes, the proof of which has a tendency to establish the commission of the crime charged, evidence of the commission of the earlier crimes is admissible.

The bill of exceptions saved by the defendant at the trial above described recited that the trial judge instructed the jury fully as to the law upon the main issues presented, to which no exception was taken. The charge contained no reference to the alleged larceny of brass. The defendant did not make any request that an instruction should be given on that subject, did not call the judge's attention to the omission of the subject from the charge, and saved no exception on the subject. *Held,* that it was not open to the defendant to contend in this court that the omission of instructions on the subject of the larceny of the brass was error entitling him to a new trial.

Instructions which permitted a jury to find that one, who had committed a homicide, was guilty of murder in the first degree because the homicide was committed with extreme atrocity and cruelty are warranted where there was evidence tending to show that the defendant either alone or assisted by others committed the homicide by stabbing and cutting the deceased in twenty places and by shooting him in the head three times.

A request, made for the first time at the close of the charge to the jury at the trial of an indictment for murder, for an instruction based on facts of which there was no evidence at the trial, properly may be refused.

INDICTMENT, found and returned on November 8, 1918, charging that the defendant on October 31, 1918, at Billerica "did assault and beat Louis Fred Soulià, with intent to kill and murder him, and by such assault and beating, did kill and murder said Louis Fred Soulia."

Other indictments charging the same offence were found and. returned against Joseph Cordio and Luigi Feci. The indictments against Francisco Feci and Cordio were tried together before *Dubuque,* J. The material evidence and exceptions saved by

Francisco Feci are described in the opinion. Cordio was found not guilty. Francisco Feci was found guilty of murder in the first degree, and alleged exceptions.

The case was submitted on briefs.

*M. J. Sawyer* & *P. Mansfield,* for the defendant.

*N. A. Tufts,* District Attorney, & *H. A. Wagner,* Assistant District Attorney, for the Commonwealth.

CROSBY, J. The defendant was indicted for the murder of Louis Fred Soulia at Billerica on October 31, 1918. Other indictments for the same offence were returned against Joseph Cordio and Luigi Feci. The indictments against Francisco Feci and Cordio were tried together. The jury returned a verdict of guilty of murder in the first degree against the defendant Francisco Feci (who will hereafter be referred to as the defendant), and of not guilty against Cordio; Luigi Feci, the third defendant, having absconded and not having been apprehended, was not tried.

The evidence introduced by the Commonwealth tended to show that Soulia, the deceased, lived alone in a small house on a country road in a sparsely settled district, and was employed by the Boston and Maine Railroad in its scrap reclamation department; that near his house there was a path crossing a tract of land covered with scrub trees and undergrowth and leading past a swampy place to the main line tracks of the railroad, after crossing which a person could go to the car shops over land of the railroad corporation; that Soulia frequently used this path in going to and from his work; that Cordio owned a house not far from that of Soulia on the same road; that a path from near Cordio's house joined the one above described; that for some time before the alleged murder, Cordio and the Fecis (the latter being brothers) had been employed by a contractor in making a culvert on land of the railroad corporation near the reclamation department; that during the time the defendants were working on the culvert there were thefts of brass journal boxes and other junk from the reclamation department; that on the morning of Tuesday, October 29, 1918, between six and seven o'clock, one Perkins, a junk dealer, went with Cordio, the defendant and another man, from Cordio's house down the path joining the one leading to the railroad tracks, and down that to a side path which led to a hole dug

in the edge of the swamp not far distant from the tracks; that the
three men showed Perkins a lot of brass journal boxes and asked
him to buy them; that he refused and they all went away; that
at about nine o'clock on the same morning Soulia and one Brown
(foreman of the reclamation department) in consequence of a con-
versation between them, walked from the car shops to the railroad
tracks and started to go up the path to Soulia's house; that
when they were about forty feet from the tracks along the path,
Brown saw the defendant cross the path ahead of him with a shot-
gun in his hand; that Brown shouted to him and waved his hand;
that the defendant looked at them and then ran away; that Soulia
led Brown to a side path near where the defendant had appeared,
and they went down it a short distance and came to a hole dug in
the edge of the swamp in which Brown saw a large quantity of
brass junk, which he identified as being the property of the rail-
road corporation; that on the following Thursday afternoon
Soulia finished his work in the car shops at twenty minutes be-
fore six; that at about seven o'clock that night shots and screams
were heard coming from the direction of the path above described;
that Soulia did not report for work thereafter, and on the follow-
ing Monday search was made and a pool of blood was found near
a bush beside the path; that leading from the pool of blood were
marks such as could be made by dragging a heavy body; that
some distance from the pool of blood the hat, dinner pail and
spectacles of Soulia were found buried in a shallow hole; that still
further along the marks apparently made by dragging something
over the ground, the dead body of Soulia was found buried in a
shallow grave; that there were footprints in the sand near the
grave, into one of which a bloody shoe taken from the defendant
at the time of his arrest exactly fitted; that under the piazza of
the house where the defendant lived was found a shovel with
sand on it like that at the grave, and, in a swampy place back of
Cordio's barn, an axe and a piece of rope, said to have blood
stains on them; that there were ashes on the grate of the stove in
the house, containing metal buttons and ashes that had been
clothing; that there were three bullet wounds in Soulia's head,
all of which entered his right eye socket; that two of the bullets
were extracted from his skull and were of the same calibre as those
found in a loaded revolver taken from a coat belonging to the

defendant just before his arrest (although he testified that the coat and revolver belonged to his brother Luigi); that the other bullet was not found; that the revolver contained six chambers; that in three of them there was an accumulation of grease and dirt but no cartridges; that there was no grease or dirt in the other three chambers, which were successive in the order of rotation of the cylinder; that the bullets found in the body of Soulia at the autopsy were of a calibre, size and manufacture adapted to and capable of being fired from the revolver.

There was further evidence tending to show that the defendant killed the deceased; also, evidence that there were about twenty incised wounds or cuts on different parts of the body of the deceased of various sizes and depths, and nothing about them taken as a whole was consistent with their having been self-inflicted; that death was the result of all the wounds, — no one of them alone would have been immediately fatal; and that death was caused by loss of blood and did not instantaneously follow any one wound.

1. The defendant excepted to the admission in evidence of the testimony of Brown (1) that he had a talk at the car shop with Soulia on the morning of October 29; (2) that in consequence of that talk he and Soulia went to the path and saw the defendant, and the brass in the hole, as previously described; (3) that he (Brown) recognized on the brass castings certain identification marks showing that they were the property of the railroad corporation; and (4) that before that date brass junk had been wrongfully taken from the railroad corporation from time to time.

It was the contention of the Commonwealth that the deceased was murdered either for revenge because of his having revealed the hiding place of the stolen junk and the connection of the defendant and Cordio therewith, or for the purpose of removing a probable witness against them in the event of their being prosecuted for stealing the property or concealing it, or for both such reasons. When this evidence was offered, the district attorney stated in the presence and hearing of the jury that it was offered for the purpose of showing a motive for the crime on the part of the defendant.

Although motive is no part of the offence charged and the Com-

monwealth is not obliged in any case to prove a motive for mur-
der, yet evidence tending to show a motive is always competent
because, if clearly shown, it may help to confirm the conclusion
reached from all the other evidence that the accused has com-
mitted the offence charged. *Commonwealth* v. *Abbott,* 130 Mass.
472. *Commonwealth* v. *Howard,* 205 Mass. 128. *Commonwealth*
v. *Rivet,* 205 Mass. 464. *Commonwealth* v. *Richmond,* 207 Mass.
240.

The evidence that Brown had a conversation with the deceased,
referred to a fact and was clearly competent; the conversation
itself was neither asked for nor given, therefore the rule against
the admission of hearsay evidence was not violated. *Common-
wealth* v. *Moulton,* 4 Gray, 39. *Sampson* v. *Sampson,* 223 Mass.
451, 459. The evidence that in consequence of the conversation
Brown and Soulia went to the path and saw the defendant and
observed the brass in the hole, that Brown recognized the prop-
erty as that of the railroad corporation, and that brass junk had
been wrongfully taken therefrom at different times, all was com-
petent and material as having a tendency to show that the brass
so secreted was stolen property. A man is not to be convicted of
a criminal offence by evidence that he has previously committed
other crimes wholly disconnected with that for which he is placed
on trial, and such evidence must be excluded; yet if it be shown
that the defendant has committed other offences, the commission
of which has a tendency to establish the fact in controversy,
such evidence is plainly admissible. *Commonwealth* v. *Shepard,*
1 Allen, 575. *Commonwealth* v. *Choate,* 105 Mass. 451, 458. *Com-
monwealth* v. *Jackson,* 132 Mass. 16. *Commonwealth* v. *Johnson,*
199 Mass. 55, 59. *Commonwealth* v. *Dow,* 217 Mass. 473, 480.
*People* v. *Sharp,* 107 N. Y. 427, 476. *Moore* v. *United States,* 150
U. S. 57. The defendant contends that there was nothing to
show that the brass castings were stolen by him or that he re-
ceived them knowing them to have been stolen, or that he had any
knowledge that he was suspected of either offence. The evidence
that the property had been stolen and concealed, that the defend-
ant was seen in the vicinity of the place where it was hidden, of
the attempt by him with others to sell it to Perkins, that when
Brown and the deceased were in the vicinity where the property
was hidden the defendant was seen and ran away when Brown

shouted to him, together with the other evidence, well warranted a finding that he either alone or with others was guilty of the larceny of the property or participated in its concealment, knowing it to have been stolen; accordingly the evidence was competent upon the question of motive. *Commonwealth* v. *McGorty,* 114 Mass. 299. *Commonwealth* v. *Kronick,* 196 Mass. 286.

2. The record recites that the presiding judge instructed the jury fully as to the law upon the main issues presented, to which no exception was taken. The charge contained no reference to the alleged larceny of brass claimed to have been the property of the railroad corporation.

No exception to the charge in this respect was saved; nor did the defendant at any time either before or after the charge make any request that the evidence referring to the larceny or concealment of the brass should be limited to the question of motive, and no exception is before us because of the omission to give such instruction.

In *Commonwealth* v. *Hassan,* 235 Mass. 26, it was said: "It is obviously reasonable that requests for instructions, if they are to be an aid in the administration of justice in the trial both of criminal and civil cases, ought to be presented before the arguments. . . . The assumption may be indulged that the salient points of the case will be adequately covered by the charge: but if at its close, substantial omissions or errors are observed, the attention of the judge may be drawn to them, and upon refusal or neglect to give correct and adequate instructions upon important factors in the case, the right to exceptions thus adequately protects the rights of parties. *Brick* v. *Bosworth,* 162 Mass. 334."

The general rule that requests for instructions or for rulings in trials, both in criminal and civil cases, shall be made in writing before the closing arguments is well established, and has long been in force in this Commonwealth independent of any formal rule to that effect. It is equally well settled that to entitle a party to object to an error or omission in the charge of the presiding judge such objection shall be based on an exception for failure to give a request seasonably made, or upon failure to correct such omission or error upon request made at the conclusion of the charge. This cardinal rule applies with equal force in civil and criminal proceedings and is deemed to be the safest method of determining

the truth of any question of fact presented. It is a reasonable rule necessary for the protection of the interests of the defendant and of the Commonwealth that a criminal trial should be conducted in accordance with definite and established rules of practice; if a defendant were permitted to remain silent until the jury had returned their verdict, and then to object to the charge for the first time in this court, it would lead to great abuse and have a tendency to hamper the correct and proper administration of justice.

In *Commonwealth* v. *Kneeland,* 20 Pick. 206, at pages 222 and 223, the rule is thus stated: "It is the duty of the judge to give such instructions to the jury in matters of law, as in his judgment may be best calculated to aid and assist them in forming their verdict. But he is not bound to give instructions, upon any particular questions, unless his attention is called to them, and they are particularly requested, in which case, if pertinent, instructions will be given, and if the judge thinks proper, he will reserve the question of their correctness." *Howe* v. *Ray,* 113 Mass. 88.

In *Commonwealth* v. *Wunsch,* 129 Mass. 477, the jury returned a verdict of guilty and the defendant alleged exceptions, contending that, while certain evidence admitted at the trial was competent for a certain purpose, it was incompetent for other purposes; and it was held that as the evidence was competent for some purposes, the defendant not having asked for instructions limiting its effect, no ground of exception was shown.

In *Higlister* v. *French,* 180 Mass. 299, the action was for malicious prosecution and slander. Certain evidence was admitted to show that the complaint on which the plaintiff was prosecuted was instituted by the defendant out of motives of revenge; the latter contended that the evidence should have been limited and that not having been so limited she was prejudiced; and it was held that if the defendant had any fears that the evidence would be so used, she should have requested the court to instruct the jury as to the purpose for which the evidence was competent.

The defendant in *Commonwealth* v. *Rivet, supra,* was convicted of murder in the first degree. The Commonwealth offered evidence to show that the motive of the defendant in the commission of the crime was his intention to collect the amount of a policy of insurance on the life of the deceased, pledged to the

defendant as security for a debt owed to him by the deceased. While the evidence was competent only upon the question of motive, this court said, at page 466: "If the defendant had wished to have the jury instructed that the evidence was admissible only for the limited purpose for which it was competent, he should have asked for such an instruction. *Howe* v. *Ray,* 113 Mass. 88."

In *Commonwealth* v. *Terregno,* 234 Mass. 56, the defendant was convicted of murder in the first degree. He was prosecuted with one Maria Cammerota, wife of the deceased; she was convicted of manslaughter. Her counsel in his closing argument to the jury referred to Terregno in terms which might have been found to have been prejudicial to him, and although his counsel objected to this portion of the argument, he did not save any exception thereto; it was held that as no exception was taken, the question was not presented by the record.

In *Commonwealth* v. *Shepard,* 1 Allen, 575, the defendant was charged with embezzlement, and evidence of an earlier like offence committed by him was admitted for the purpose of proving a guilty intent in the commission of the previous act. After a verdict of guilty, the presiding judge reported the case to this court (Gen. Sts. c. 173, § 8) for the determination of the question whether the evidence introduced was sufficient to authorize the verdict. The failure to limit the evidence as to its legitimate effect by instructions to the jury was held to be sufficient ground for a new trial. The report so made to this court presented only questions of law. *Commonwealth* v. *Brynes,* 126 Mass. 248. *Electric Welding Co. Ltd.* v. *Prince,* 200 Mass. 386, 391, 392. The report showed that no specific instructions were given respecting the purpose for which the evidence above referred to was admitted; in these circumstances the question whether such instructions should have been given was properly before the court to the same extent as if it had been raised by exception to the refusal of the trial judge to give the instructions. It is plain that the decision in that case does not support the defendant's contention. *Commonwealth* v. *Jackson, supra,* cited by the defendant, is plainly distinguishable from the case at bar.

While in some jurisdictions it is held to be reversible error for the presiding judge in a criminal case, even if not requested and although no exceptions are taken, to fail fully to instruct the

jury upon every question of law legitimately raised by the evidence and material to a decision of the case, such is not the rule in this Commonwealth. See *People* v. *Becker*, 210 N. Y. 274, 285. See also cases collected in 16 C. J. 1056, notes 15, 16, 17.

3. At the close of the charge the defendant excepted to so much of the instructions as allowed the jury to find a verdict of murder in the first degree on the ground that it was committed with extreme atrocity and cruelty. R. L. c. 207, § 1. If, as the jury were warranted in finding upon the direct and circumstantial evidence the defendant either alone or assisted by others killed the deceased by stabbing and wounding him in many parts of his body, and by shooting him, it could not be ruled that the crime was not committed with extreme atrocity and cruelty; manifestly it was a question of fact properly left to the jury upon full and adequate instructions to determine whether the deceased was killed by the defendant, and if they so found, whether the crime was committed with such savagery and brutality as to constitute murder committed with extreme atrocity and cruelty. *Commonwealth* v. *Desmarteau*, 16 Gray, 1. *Commonwealth* v. *Devlin*, 126 Mass. 253.

4. At the close of the charge the defendant's counsel stated: "I would like to ask the court to suggest to the jury that there is a third person in this case, who had planned this, and that the defendant Feci said 'that as soon as he heard the shots he ran away; therefore he couldn't be charged with the crime of murder, and a verdict of guilty in the first degree couldn't be brought in against him." If this is to be treated as a request for a ruling of law, it is plain that it could not properly have been given; there was no evidence as to the person who planned the murder, and while the defendant had said that he ran away as soon as he heard the shots fired, the jury were not obliged to believe this testimony; accordingly they could not properly have been instructed that the defendant could not be found guilty of murder in the first degree. If the request is to be considered as a request to call attention to the evidence referred to, no exception lies, as the judge was not required to refer to fragmentary parts of the evidence; the case was for the jury on all the evidence. *Jaquith* v. *Rogers*, 179 Mass. 192, 197. *Commonwealth* v. *Johnson*, 188 Mass. 382, 387.

We have examined and considered all the questions raised by the record and find no error of law in the conduct of the trial.

*Exceptions overruled.*