COMMONWEALTH *vs.* VITO CARUSO.

Essex. January 22, 1925. — February 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Homicide. Evidence,* Presumptions and burden of proof, Competency, Of motive, Testimony of deceased witness. *Witness,* Impeachment.

At the trial of an indictment charging the defendant with the murder of a woman, there was evidence tending to show that the deceased was the wife of the defendant; that her life was insured for his benefit and that she owned real and personal property in her own right and name; that she and the defendant had had trouble over property matters; that she had turned him out of her house; that about four years before the murder he had brought a libel for divorce which a month later was dismissed for lack of service upon her; that about two and one half years before the murder he had threatened her life; that at 10:30 on the night of the murder the defendant had entered his house with his wife and had left it at about four o'clock the next morning for an automobile journey with his brother and a chauffeur; that about one o'clock the next afternoon he returned, entered the house, and later simulated that he was overcome by gas escaping in the house and had found his wife dead; that her body was found cut and bruised and bearing evidences of a struggle; and that a knife and a baseball bat were found on the premises bearing evidence of having been used to commit the murder. There was evidence negativing access to the premises by any one else than the defendant. The jury found the defendant guilty of murder in the second degree. *Held,* that it could not be said that the verdict was unwarranted.

At the hearing in a district court of a complaint charging the defendant with murder, a medical examiner testified. The defendant afterwards was indicted, and, before the trial in the Superior Court, the medical examiner died. At the trial, testimony of two stenographers who, the trial judge found, took all the testimony of the medical examiner in the district court and took it accurately, was offered and was admitted as to what was the testimony of the medical examiner in the district court. It appeared that the medical examiner was fully cross-examined by the defendant in the district court. *Held,* that an exception to the admission of the testimony of the stenographers must be overruled.

At the trial of the indictment above described, it became material for the Commonwealth to prove how much gas would pass in a given time through a two burner hot plate such as was found in the defendant's house several months after the murder, and testimony of the appliance manager of a local gas company, showing the amount of gas per hour which would pass through such an appliance, was admitted. *Held,* that a general exception to the admission could not be sustained, it not appearing that any change was made in the burner between the time of the murder and the time when the witness saw it, nor that the defendant excepted to the testimony on the ground that the conditions were not the same.

At the trial of the indictment above described, it was proper for the trial judge to exclude evidence tending to show bad feeling between the deceased and other persons than the defendant, where there was no evidence tending to connect any of such persons with the murder.

At the trial above described, the jury were instructed adequately and accurately as to the burden on the Commonwealth of proof beyond a reasonable doubt, and it was *held,* that the trial judge was not required to give further instructions on the subject in the exact language of certain requests made by the defendant, nor to charge upon the pertinency of certain isolated and disputed evidence.

INDICTMENT, found and returned on September 15, 1922, charging the defendant with the murder of Marie Caruso.

In the Superior Court, there was a trial before *Quinn,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. Upon all the evidence the jury should return a verdict of 'not guilty.'

"2. As a matter of law the Commonwealth has shown no motive on the part of the defendant to kill his wife."

"7. Where the facts are as consistent with the defendant's innocence as with his guilt, the Commonwealth has not sustained the burden of proving him guilty beyond a reasonable doubt."

"9. Upon all the evidence in this case, the defendant cannot be convicted of murder in the second degree."

"17. In order to prove the offense alleged beyond a reasonable doubt, it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the understanding, and satisfies the reason

and judgment of those who are bound to act conscientiously upon it."

"21. The jury cannot be too cautious with respect to the importance of evidence alleged to show a motive on the part of the defendant, especially if this evidence relates to a remote period of time.

"22. If the jury find from the evidence that there was complete reconciliation between the defendant and his wife, they should disregard all evidence alleged to show a motive on the part of the defendant at a time or times prior to the reconciliation."

"31. If the jury are left in doubt as to whether Marie Caruso was killed before or after the defendant left his home on the morning of July 2, 1922, they should return a verdict of 'not guilty.'"

"34. No inference should be drawn against the defendant because he has shown no motive on the part of any one else to kill his wife. Such evidence, even if offered by him, would not be admissible in this case."

"36. A greater degree of certainty is required to convict the defendant of the crime alleged in the indictment than might satisfy the jury in their ordinary business affairs."

The requests were refused. Exceptions saved by the defendant and argued before this court and material portions of the charge to the jury are described in the opinion. The defendant was found guilty of murder in the second degree and alleged exceptions.

*M. A. Sullivan*, for the defendant.

*S. H. Donnell*, for the Commonwealth.

CARROLL, J. The defendant was indicted for murder in the first degree of his wife, Marie Caruso, at Lawrence on July 2, 1922. The jury returned a verdict of " Guilty of murder in the second degree."

The defendant and his wife entered their home, where they lived together, about thirty minutes after ten o'clock on the night of July 1, 1922. The defendant left his home the next morning about four o'clock, and a few minutes later, in company with his brother and a chauffeur, went by automobile to Salisbury Beach. Returning from the beach about one

o'clock in the afternoon of July 2, he entered his home and there saw his wife, partly dressed, lying dead on the bed, with blood on her body and on the bed clothes. The Commonwealth contended that the defendant killed his wife at some time between thirty minutes after ten o'clock on the night of July 1 and four o'clock on the morning of July 2. The contention of the defendant was that, when he left his house on the morning of July 2, his wife was alive and bade him goodbye; and that he did not see her again until he found her dead.

There was evidence that numerous wounds were on the body of Mrs. Caruso, some of which were fatal, and several bruises, as well as nail marks and cuts on her face and neck; that a baseball bat belonging to the defendant was found in the house, "spotted with blood"; that it was sufficient to cause the injury found on Mrs. Caruso's forehead; that a knife with human blood stains upon it was found in a container in the house; that some of the wounds could have been caused by this knife; that three "and possibly four" different weapons were used, and that "strong force was applied to the throat with the hand." The defendant and his wife occupied the same bed on the night of July 1. A jury could have found that no one else was in the house during the night; that after he left the tenement no one entered it until he returned. From the testimony showing the lividity, the temperature and stiffening of the body of the victim, it could have been found that she died on the morning of July 2, before the defendant left the home.

Mrs. Caruso was insured in the sum of $750, payable to the defendant. The title to the real estate where they lived stood in her name; she had $900 on deposit standing in the bank in her name. It appeared that at one time the defendant and his wife had trouble about the property; that she told him "I am the owner of the property — get out"; that he went to California but returned; that in September, 1918, the defendant brought a libel for divorce against his wife alleging cruel and abusive treatment; that there was no return of service on her and the libel was dismissed in October of that year; that at one time about two years and

six months before the murder the defendant was heard to say to his wife during a dispute between them, "Sometime I will kill you" ; that on the inside of the door entering the defendant's house there was a Yale lock and a large bolt underneath the lock. The defendant stated that his wife always bolted the door when he was out of the house; that on the morning of July 2, when he left the house, his wife was standing up and he asked her to go to bed; that she said "All right, I will go to bed when you go, I want to be sure that this door is locked" ; that "she got hold of the knob and shook the door." He was asked how he opened his door on his return, and replied, "I take my key, I put it in the lock, I turned it, I opened the door." It also appeared that at some time after the defendant entered the house gas was escaping from an open gas jet. It did not distinctly appear when this gas jet was opened. When the defendant discovered the body of his wife he was much disturbed, and was seen coming from the house "crying and pulling his hair." In his statement to the police he said, "The gas got the best of me and I fell." There was evidence tending to show that this statement was false, and the Commonwealth contended that his conduct after discovering the dead body was simulated, as was his apparently cheerful conduct during the day before the discovery was made. Without going further into the details, there was evidence to prove that the defendant's wife was murdered by him, while in her home, when no one but the victim and the defendant were present. It was for the jury to say whether the evidence convinced them of the defendant's guilt. *Commonwealth* v. *Best*, 180 Mass. 492, 497.

Dr. Dow, the medical examiner of the district, testified in the District Court; he died before the trial of the defendant in the Superior Court. The defendant objected to the stenographers reading their notes of Dr. Dow's testimony at the former trial, on the ground that the notes did not contain all of his testimony and the testimony was given "on a different issue." The trial judge found as a fact that all the testimony of Dr. Dow was taken by one or both of the stenographers; that it was accurately taken; that counsel for the

defendant had an opportunity to cross-examine Dr. Dow and did cross-examine him at the former trial. The former testimony of Dr. Dow at the trial of the defendant in the District Court was upon the same issue and was substantially reproduced in all material particulars. It could have been found that all of his testimony was reported, and repeated at the trial, by one or both of the stenographers who took notes of his testimony. There was no error in admitting this testimony. The rule laid down in *Commonwealth* v. *Richards*, 18 Pick. 434, requiring that all the testimony of the deceased witness must be proved, was complied with. See *Ibanez* v. *Winston*, 222 Mass. 129. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 385.

As bearing on the question by whom the gas jet was opened and at what time, there was testimony by the appliance manager of the Lawrence Gas Company showing that about ten cubic feet of gas an hour would pass through a two burner hot plate such as he found in the defendant's house in December, 1922. The defendant excepted to this testimony. His exception was a general one. It does not appear that any change was made in the burner between the date of the murder and December, 1922; and it does not appear that the defendant excepted to the testimony on the ground that the conditions were not the same. There was evidence that the appliance manager was qualified to testify. The judge could properly admit this testimony. There was no error of law in admitting it. *New York Central Railroad* v. *Freedman*, 240 Mass. 200, 210.

The evidence tending to show motive on the part of the defendant was properly admitted. *Commonwealth* v. *Feci*, 235 Mass. 562, 567, and cases cited. The defendant offered to show that there had been trouble between Mrs. Caruso and persons other than the defendant; that there was bad feeling between her and these third persons. This evidence was excluded. There was no evidence whatever connecting these persons with the murder. There was no error in the exclusion of this evidence. See *Commonwealth* v. *Trefethen*, 157 Mass. 180, 191, *Commonwealth* v. *Abbott*, 130 Mass. 472, 475.

The defendant called as a witness one Rosario Zappala

who testified in substance that Mrs. Caruso was alive at eight o'clock in the morning of July 2. The Commonwealth introduced testimony tending to show that he was convicted of the unlawful keeping for sale of intoxicating liquor, under the name of Alfio Zangri. Near the close of the trial the defence stated it desired to present at the opening of court the next morning evidence that Zappala and Zangri were different persons. The next morning the court ordered the jury to disregard all reference to Zappala being named in the record of conviction, and everything in regard to the record, and to disregard the record. It must be presumed that the jury followed this instruction. The testimony of Zappala was not impeached by the record introduced and subsequently withdrawn by the direction of the judge. The defendant was not prejudiced by this ruling. *Clark v. Boston & Maine Railroad,* 164 Mass. 434, 439. *Troy v. Rudnick,* 198 Mass. 563, 569. *Costello v. Crowell,* 133 Mass. 352, 354, 355.

The judge was not bound to give the request of the defendant, "If the jury are left in doubt as to whether Maria Caruso was killed before or after the defendant left his home on the morning of July 2, 1922, they should return a verdict of 'not guilty'" in these exact words. The charge of the judge was complete, accurate and impartial; it dealt with all the essential questions. *Commonwealth v. Feci,* 235 Mass. 562. *Commonwealth v. Hughes,* 183 Mass. 221.

The remaining requests of the defendant had reference to the burden of proof. The jury were fully and correctly instructed on this question. The charge was fair and all the rights of the defendant were protected. The jury must have understood that they could not convict unless the Commonwealth proved the commission of the crime by the defendant beyond a reasonable doubt. *Commonwealth v. Costly,* 118 Mass. 1, 24.

We have considered all the exceptions argued on the defendant's brief. There was no error in the manner in which the trial was conducted. The rulings of the judge and his instructions to the jury were correct.

*Exceptions overruled.*