COMMONWEALTH vs. ISRAEL GONZALEZ PEREZ.

No. 88-P-1245.

Hampden. April 7, 1989. — July 13, 1989.

Present: PERRETTA, KAPLAN, & DREBEN, JJ.

*Practice, Criminal,* Required finding. *Evidence,* Hearsay, Identification, State of mind, Admissions and confessions. *Identification.*

At a criminal trial, where the evidence at the close of the Commonwealth's case was sufficient to warrant the defendant's conviction of trafficking in cocaine, the judge correctly denied the defendant's motion for a required finding of not guilty. [551-553]

A criminal case was remanded for reconsideration of the defendant's motion for a new trial in circumstances where the defendant contended that the only substantive identification testimony was inadmissible hearsay and where findings by the judge at the jury-waived trial and at the hearing on the motion for a new trial were possibly inconsistent. [553-556]

INDICTMENT found and returned in the Superior Court Department on November 10, 1986.

The case was heard by *Constance M. Sweeney*, J., and a motion for a new trial was considered by her.

*Terry Scott Nagel* for the defendant.

*Elizabeth R. Dunphy*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Found guilty after a bench trial of trafficking in cocaine, the defendant appeals from his conviction and from the denial of his motion for a new trial. These appeals concern a compelling description of the defendant — "an individual with a tattoo of a cross right in between his eyebrows." The description came from an informant who was not present at trial. The defendant urges, and the Commonwealth denies, that the informant's indirect statement was used substantively to identify the defendant as a person offering to sell cocaine. The defendant also claims that his motion for a required finding of not guilty should have been allowed as there was insufficient

evidence to link him with the cocaine which was found by the police as a result of the informant's activities.

Reviewing the evidence at trial in the light most favorable to the Commonwealth, we reject the claim that the defendant was entitled to a required finding of not guilty. The record of the hearing on the motion for a new trial, however, creates uncertainty as to whether the judge at trial relied on the hearsay description for identification purposes. For this reason, we remand the matter to the trial judge to review the transcripts of both the trial and the hearing on the motion for a new trial and to determine anew whether "it appears that justice may not have been done." Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

1. In discussing the sufficiency of the evidence presented by the Commonwealth, we rely on the evidence which was introduced without objection, and we make no reference to the statements which are the subject of the defendant's indirect hearsay claim. Sergeant Thomas Guilmet, supervisor of the Western Massachusetts Narcotics Task Force, testified that on September 26, 1986, surveillance teams conducted an investigation with the help of an informant. The informant, who was to attempt to purchase cocaine, was "wired" and was to give a signal to Sergeant Guilmet if he observed any cocaine. After following the informant through various parts of Holyoke, the surveillance teams were led to an area near a certain garage in Holyoke. Soon thereafter, Sergeant Guilmet received the agreed upon signal from the informant. He advised the other surveillance teams that his team would approach the garage and would stop certain individuals from leaving. Sergeant Guilmet proceeded to the garage, "grabbed" the informant, talked to him, and then, with another police officer, went over to an "older" brown or green Datsun automobile. "Right in the car, in plain view from outside the car, . . . we could see . . . a brown paper bag with silver tin foil balls inside of it, it was open." Subsequent analysis showed that the balls contained one hundred twelve and one-half grams of white powder containing fifty-six percent cocaine, a Class B controlled substance as defined in G. L. c. 94C, § 31.

While Sergeant Guilmet was waiting in one area, State police officers in another vehicle were watching the garage from a different vantage point. Trooper James J. Fitzgibbon testified that from his vehicle he could see the area behind the garage through a chain link fence. He saw the informant drive into the rear yard and speak to an older man.[1] A green Datsun also drove into the rear lot, and the informant and the older man approached the Datsun and conversed with its driver. After the latter motioned to the passenger side of his vehicle, the informant leaned into the vehicle for a few seconds and then walked towards a group of individuals who were standing outside of the garage. The driver of the green Datsun remained in his car for a few minutes but subsequently left to speak to the driver of a Buick automobile which had pulled up in front of the Datsun. Trooper Fitzgibbon's vehicle was located about sixty feet from the Datsun. He observed the driver in profile for about fifteen minutes and also saw the driver as he left his car. Trooper Fitzgibbon identified the defendant as the driver.

The defendant makes the following argument: since the Datsun was unattended with its windows open after he left the vehicle and since there were many people milling about, there was insufficient evidence to connect him with the contraband found on the floor of the Datsun. Although it is possible that the drugs were placed in the Datsun after the defendant had left the car, the Commonwealth need not "exclude every other hypothesis to the effect that a person or persons other than the defendant[]" may have placed the drugs there. "That another might have had such an opportunity goes only to the weight of the evidence" which is a matter for the finder of fact. *Commonwealth* v. *Casale*, 381 Mass. 167, 175-176 (1980). *Commonwealth* v. *Pyburn*, 26 Mass. App. Ct. 967, 968 (1988). From the evidence presented, a fact finder was warranted in inferring beyond a reasonable doubt that the drugs on the floor of the front seat were in the Datsun prior to the defendant's leaving the vehicle.

---

[1] This man was the defendant's uncle. He was subsequently indicted as a result of Sergeant Guilmet's investigation.

The defendant's reliance on *Commonwealth* v. *Amendola*, 26 Mass. App. Ct. 713, 717 (1988), further app. rev. granted, 404 Mass. 1104 (1989), is also misplaced. In that case, there was insufficient evidence to warrant a finding that the defendant was aware of the contents of the glove compartment or the trunk of the vehicle. In contrast to the facts in that case, the drugs were here in plain view on the floor of the front seat area warranting a finding that they were known to the defendant and under his control. See *Commonwealth* v. *Gray*, 5 Mass. App. Ct. 296, 299 (1977).

2. We turn next to the telltale tattoo. Aware that the informant would not be available for cross-examination, counsel for the defendant, prior to the presentation of evidence, cautioned the trial judge that he "would be objecting to any hearsay evidence that attempts to bootstrap the identification through [statements] told to these officers . . . by . . . the informant." He also specifically asked the judge to consider carefully the identification evidence connecting the defendant to the crime.

Sergeant Guilmet was the first Commonwealth witness. In addition to the evidence already recounted, Sergeant Guilmet stated that after he had talked with the informant, he went to the officers in the other vehicle and "told them that I was looking for an individual with a star." At this point counsel objected and the judge ruled:

> "It's not accepted for the truth of the matter, but rather just as a preliminary as to why he might have done something, Mr. St. James" (counsel for the defendant).
>
> .    .    .
>
> MR. ST. JAMES: "There is an additional issue here, that being that the only way he could have gotten this information would be from the informant, and by describing him, he is describing someone he did not see, himself."
>
> THE COURT: "I am well aware of that issue, and I am sensitive to it. Thank you. Go ahead, Sergeant."

THE WITNESS: "I told the officers that I was looking for an individual with a tattoo of a cross right in between his eyebrows."

The foregoing excerpt from the transcript, containing the description of the defendant which was anticipated by defense counsel, also includes an explicit indication by the trial judge that she was not admitting the evidence for substantive purposes. She clearly recognized that the admission of a statement of the informant that the defendant had a tattoo on his forehead would be erroneous. *Commonwealth* v. *Moulton*, 4 Gray 39, 40 (1855). See *Commonwealth* v. *Fagan*, 108 Mass. 471, 472 (1871).

She was also aware of the rule that policemen or other investigators may explain what they did in consequence of conversations with others. Thus in *Commonwealth* v. *Cordle*, 404 Mass. 733, 743-744 (1989), a police officer was allowed to testify that, as a result of his conversation with the victim, the defendant was arrested. Other cases to the same effect are: *Commonwealth* v. *Moulton*, 4 Gray at 39 (officer permitted to answer, "In consequence of what was told me, I started to look for Turner Moulton"); *Commonwealth* v. *Feci* , 235 Mass. 562, 567 (1920); *Commonwealth* v. *Agiasottelis*, 336 Mass. 12, 14 (1957); *Commonwealth* v. *Binnette*, 351 Mass. 704 (1966); *Commonwealth* v. *Sepulveda*, 6 Mass. App. Ct. 868, 869 (1978).

The reason for this rule, which is one of long standing, is that such "testimony [makes] the discovery of the actual evidence of identity seem more natural and less mysterious." *Commonwealth* v. *DiStasio*, 294 Mass. 273, 287 (1936), cert. denied, 302 U.S. 683 (1937), overruled on other grounds, *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984). See 4 Weinstein's Evidence par. 801(c)[01] at 79-80 & n.30 (1987). "[A]n . . . investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct." McCormick, Evidence § 249 at 734 (3d ed. 1984). The specific description of the defendant given to the

investigator is, however, seldom needed and the likelihood of prejudice is great. For this reason a statement that an officer acted "upon information received," or "as a consequence of a conversation," or words to that effect — without further detail — satisfy the purpose of explaining police conduct. *Ibid*. Because such an explanatory statement does not give the conversation itself, the rule against the admission of hearsay evidence is not violated.[2] *Commonwealth* v. *Feci*, 235 Mass. at 567. *Commonwealth* v. *Sepulveda*, 6 Mass. App. Ct. at 869. Compare *Commonwealth* v. *Fagan*, 108 Mass. at 472.

The judge's limitation of the purpose of the admission showed her sensitivity to these problems. Although the officer was permitted to give the description itself, we accept the judge's statement that she did not consider the evidence for substantive purpose.[3] See *Berlandi* v. *Commonwealth*, 314 Mass. 424, 452-453 (1943). See also *Delle Chiaie* v. *Commonwealth*, 367 Mass. 527, 539-540 (1975). The defendant does not argue otherwise.

The problem arises from the judge's statements at the motion for a new trial. That motion was based on counsel's investigations after trial which led him to conclude that Trooper Fitzgibbon's observations of the defendant could not have been made from the location of his surveillance vehicle. Defense counsel stated:

"During his testimony, Trooper Fitzgibbon said that he was parked in a position where he could observe a green

---

[2] While Sergeant Guilmet's testimony is not strictly hearsay as would be the statement, "The informer told me that the seller of drugs has a tattoo," we consider his indirect description akin to a direct statement of the informer, particularly where, as here, it is so graphic and hence prejudicial. See *Commonwealth* v. *Fagan*, 108 Mass. at 472.

For purposes of this opinion, we do not consider another hearsay aspect of Sergeant Guilmet's testimony — he testified to his extrajudicial statement to the police officers.

[3] Since we consider the description inadmissible for substantive purposes, we need not reach the defendant's arguments based on the Sixth Amendment to the Constitution of the United States (confrontation clause), art. 12 of the Declaration of Rights to the Massachusetts Constitution, and G.L. c. 263, § 5.

Datsun drive into the garage area, and in which he testified he saw the defendant alight from that car, . . . and he said he recognized the defendant or saw the defendant in profile from a distance of about fifty feet. It was that sole identification testimony, Your Honor, from the only witness who spoke about the defendant being there, which led to this defendant's conviction."

The judge interrupted:

"Wait one minute. I am not going to — there was not a specific request by anyone at any point for me to make specific findings on the record, and I will tell you right now that that is a misstatement, an absolute misstatement of what my finding was based on, and I want the record to reflect that that was not the sole evidence on which my finding was based."

Claiming that the only other identification evidence was derived from the informant, the defendant assumes that the judge's comment established that she used the "tattoo" statement substantively for purposes of identification. While we recognize that the judge's subsequent memory (the motion was heard four months after trial) is probably less accurate than her statements at trial, the possible inconsistency between her denial of any substantive significance to the hearsay statement and her quoted statement on the new trial motion (if she was referring to substantive identification evidence) makes a remand appropriate in this case. Sergeant Guilmet's description was instinct with prejudice. Accordingly, we remand the case to the trial judge to review both the transcripts of the trial and the motion hearing to determine whether a new trial is warranted.

The judgment is affirmed. The order denying the motion for a new trial is vacated, and the matter is remanded to the trial judge for reconsideration of the motion.

*So ordered.*