COMMONWEALTH vs. ALLEN GEORGE LOCKE & others
(and two companion cases [1]).

Suffolk.    October 7, 1958. — March 13, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Aiding Escape of Prisoner. Practice, Criminal,* Appeal with assignment of
errors; Sentence; Judgment; Exceptions: whether error harmful.
*Evidence,* Best and secondary, Photograph, Of identity, Credibility of
witness, Relevancy and materiality. *Pleading, Criminal,* Indictment.
*Error,* Whether error harmful.

A criminal case cannot come before this court on an appeal with an as-
signment of errors under G. L. c. 278, §§ 33A–33G, until after sentence,
which constitutes the judgment. [684]
After a witness at a criminal trial had been unable to identify a de-
fendant present in court at the trial as the driver of an automobile
involved in the crime and observed by the witness, there was no error
in admitting testimony of that witness that certain facial characteristics
revealed in a photograph of that defendant shown to the witness re-
sembled some of the features of the driver, or in admitting the photo-
graph in evidence. [686, 687]
In an indictment under G. L. c. 268, § 15, for aiding and assisting a
prisoner in a jail in endeavoring to escape therefrom, an allegation
that the defendant knew that the prisoner was charged with a felony
did not state an essential element of the crime and need not be proved
in order to secure a conviction. [687–688]
After a witness for the Commonwealth at a criminal trial of two de-
fendants had testified in a manner unsatisfactory to the prosecutor,
there was no reversible error in allowing another witness for the Com-
monwealth to testify that the first witness had cautioned her not to
identify anyone in court since "these are shrewd characters and they
have a lot of backing" where the judge instructed the jury that such
statements of the first witness to her were to be considered "only as
bearing on" his credibility, were not shown to have been prompted
by the defendants, and were not "any basis for any least inference of
guilt" of the defendants. [689]
At the trial of an indictment for aiding and assisting a prisoner in a jail
in endeavoring to escape therefrom, there was no reversible error in
admitting in evidence warrants committing the defendant to the same
jail in default of bail on certain charges shortly before the escape oc-

[1] The companion cases are Commonwealth vs. Allen George Locke and
Commonwealth vs. William E. Cavanaugh.

curred where the judge instructed the jury that the warrants were admitted solely to show the defendant's presence at the jail at a material time and that no "inferences of guilt, however slight . . . no inferences of any kind against him" should be drawn from the warrants. [689-690]

At the trial of an indictment for aiding and assisting a prisoner in a jail in endeavoring to escape therefrom, where there was evidence that before the escape the defendant indirectly inquired of the prisoner "what he wants us to do and . . . where the money is" and received an answer, there was no error in admitting evidence that a few weeks after the escape the defendant had a substantial sum of money on his person and that a few weeks before the escape he had only a small amount in change on his person. [690-691]

THREE INDICTMENTS found and returned on September 8, 1954.

The cases were tried in the Superior Court before *Smith,* J.

*Benjamin L. Goldenberg,* for the defendant Locke.

*Joseph J. Balliro,* for the defendant Cavanaugh.

*John T. Gaffney,* Assistant District Attorney, (*Donald P. Brennan* with him,) for the Commonwealth.

COUNIHAN, J.   These cases arise out of three indictments which were returned by the grand jury for Suffolk County. In the first case the defendants Locke and Cavanaugh were tried with several codefendants on an indictment which charged all of them with conspiring together to aid and assist one Elmer Burke, an inmate of the Suffolk County jail, charged with a felony as the defendants well knew, in endeavoring to escape from jail.

The second indictment charged that Locke did aid and assist Elmer Burke, an inmate of the jail, charged with a felony as Locke well knew, in endeavoring to escape from jail.

The third indictment charged that Cavanaugh did aid and assist Elmer Burke, an inmate of the jail, charged with a felony as Cavanaugh well knew, in endeavoring to escape from jail.

The cases were tried together before a jury by order of the judge under G. L. c. 278, §§ 33A-33G, inclusive, as amended. In the first case the jury found the defendants Locke and Cavanaugh guilty and two codefendants not guilty. Ver-

dicts of not guilty had been directed by the judge for other codefendants. The indictment of Locke and Cavanaugh on the conspiracy charge was placed on file by the judge after the verdicts of guilty by the jury, and no sentence was imposed by him upon either of them.

The defendants Locke and Cavanaugh were each found guilty on the indictments for aiding and assisting Burke in endeavoring to escape and each was sentenced to a term of not more than ten years and not less than seven years in State prison.

The cases come here upon the appeals of Locke and Cavanaugh, accompanied by a summary of the record, assignments of error, and a transcript of the evidence. There was no error.

We do not consider the appeals or the assignments of error by Locke and Cavanaugh on the conspiracy indictment for the reason that no such appeal may come before us until after judgment, which in criminal cases is the sentence. *Commonwealth* v. *Carver,* 224 Mass. 42, 44. *Commonwealth* v. *Coshnear,* 289 Mass. 516, 520. *Commonwealth* v. *Dowe,* 315 Mass. 217, 219. *Whitney* v. *Commonwealth,* 337 Mass. 722, 723. *Birnbaum* v. *United States,* 107 F. 2d 885, 886–887 (4th Cir.).

The jury would have been warranted in finding the following facts as to the indictments against Locke and Cavanaugh for aiding and assisting Elmer Burke in endeavoring to escape from jail. Elmer Burke was committed to jail on June 21, 1954, without bail, pending trial for alleged illegal possession of a machine gun, which is a felony. On July 23, 1954, Locke was committed to the jail in lieu of bail on a criminal charge. He was admitted to bail on July 26, 1954. Cavanaugh was committed to jail prior to June 21, 1954, in lieu of bail on a serious charge. He was bailed on July 28, 1954. He was recommitted to jail on another charge on August 2, 1954, where he remained until August 17, 1954, when he was again bailed. On Saturday, August 28, 1954, at about 2:30 P.M. Burke and other inmates of the jail were admitted to the jail yard for exercise. Burke walked around

the exercise circle for about ten minutes when he suddenly made a dash toward a gatehouse which led to Charles Street. One of the jail guards pursued him but when Burke reached the gatehouse the door of it was opened. A man dressed in a guard's uniform, with a stocking covering his face, pointed a gun at the guard and told him to get back or he would blow his brains out. The guard stepped back. Burke dropped to the floor and wriggled through a hole in the steel barred door. There were four doors in the gatehouse; the first one, opening into the jail yard itself, is of heavy steel construction; the second is composed of steel bars; the third one opening from the gatehouse area is a heavy wooden door; and the fourth one is a collapsible metal type extending from one side of the door frame to the other on Charles Street and secured by a padlock. After Burke's escape this collapsible door was telescoped against the door frame and the padlock was missing. Locks on the wooden door and on the steel door had been tampered with so that these doors could be opened easily without a key. Bars had been sawed out of the lower part of the steel barred door leaving space enough through which Burke had crawled.

At approximately 2:45 P.M. of the same day, a Miss Cox, a nurse employed at the Baker Memorial Hospital, came out of the underpass which leads from the center of the traffic circle to Charles Street. She saw two men, dressed in guards' uniforms, approach the door to the gatehouse on Charles Street. As she walked by this door which was open, she saw the two men inside the gatehouse. One of them was facing her and the other had his back toward her. The man facing her had "prominent ears . . . [and a] prominent Adam's apple." She testified that although she could not positively identify this man as Cavanaugh, "he looks like the man."

On the day of the escape, between 2:30 P.M. and 2:50 P.M. a Mrs. Hagerman was seated on the right front seat of an automobile which had stopped on Charles Street close to the end of a traffic island which was nearly opposite the door leading to the gatehouse. Her husband was the operator of

that automobile. She observed another automobile which was parked at the curb in front of the entrance to the gate-house. She saw a man dressed like a woman behind the wheel of that automobile. He was wearing a "black straw peaked hat with a rolled-up brim, with white flowers on it, and a red top with white figures in it, short sleeves, and something down to the middle of his nose." He wore a "black stringy" wig. His left arm was sticking out of the open car window up to his elbow. It was a very heavy arm with black hairs and a man's wristwatch on it. She saw a man run out of the gatehouse door and when he reached this other automobile he dove into the rear seat of it. Two other men dressed as guards came out and got into that automobile, one in front and one in back. Each of these men had a nylon stocking pulled over his face and hooked over the end of his nose. The so called escape automobile slowly eased away from the curb and then it made a left turn across Charles Street and headed toward the automobile in which she was seated. It passed slowly between the front of her automobile and the end of the traffic island. Windows in her automobile were open. The other automobile went slowly through traffic up over the so called West Boston Bridge where it increased its speed. During this time the witness noticed the facial characteristics of the driver of the other automobile, particularly "the shape of his nose and his jaw line and his lips." She was unable to identify either of the defendants as the driver of the other automobile. Later on she testified that there were certain facial characteristics in a photograph of Locke, which was shown her, which resembled some of the features of the man who drove the getaway automobile. She described the nose, the lips, and a triangle in the muscle of the lower cheek in the photograph of Locke as resembling the facial character-istics of the driver of the other automobile.

Other testimony will be discussed in connection with the disposition of the assignments of error of both Locke and Cavanaugh.

LOCKE'S ASSIGNMENTS OF ERROR.

Although many exceptions were taken by Locke during the course of the trial, the record shows that under c. 278, §§ 33A–33G, inclusive, Locke relied upon only four assignments of error.

Locke's first and second assignments of error relate to the testimony of Mrs. Hagerman identifying certain facial characteristics of Locke after having been shown a photograph of Locke, and to the introduction of such photograph in evidence. He complains that such evidence was not admissible because he was actually in court during the trial and his own facial characteristics only should have been subjected to the observation of the witness. He places great reliance upon the best evidence rule, but apart from the contents of a writing this rule does not require that a fact be proved in only one way. *Commonwealth* v. *Johnson*, 199 Mass. 55, 62. *Commonwealth* v. *Tsaffaras*, 250 Mass. 445. Wigmore, Evidence (3d ed.) § 1174. McCormick, Evidence, § 195. The introduction of the photograph in evidence was permissible as an aid to the jury in matching the description given by the witness with the features of Locke. In the last analysis it presented a question of fact for the jury to decide.

The third assignment of error of Locke relates to the introduction of a book of short stories with some sketches in the front part of it. This evidence relates only to the conspiracy indictment so for reasons already given we do not consider this assignment of error.

Locke's fourth assignment of error relates to the denial of his motions for directed verdicts of not guilty. Because of what we have hereinbefore said we consider only the denial of the motion for a directed verdict on the indictment charging Locke with aiding and assisting Burke in endeavoring to escape. He particularly complains of the allegation in that indictment that Burke was committed to jail charged with a felony as was well known to Locke. He asserts that

there was no evidence that Locke knew that Burke was charged with a felony.

The statute upon which this indictment was based, G. L. c. 268, § 15, as it read in part on August 28, 1954, is as follows: ". . . or whoever, by any means, aids or assists such prisoner in endeavoring to escape therefrom, whether such escape is effected or attempted or not . . . shall, if the person whose escape or rescue was effected or intended is a convict under sentence in the state prison or is charged with a felony, be punished . . . by imprisonment in the state prison for not more than ten years . . ." or otherwise in certain circumstances to a term of not more than seven years, or if the prisoner is charged with a misdemeanor, to a term in jail for not more than two years. The allegation complained of is not essential to the indictment and need not be proved. *Commonwealth* v. *Mercier,* 257 Mass. 353, 364–365. While perhaps it might have been better if this particular allegation had been omitted from the indictment, no harm was done for counsel for the defendants in open court admitted that Burke was in custody in jail charged with a felony. The only purpose of that part of the statute with reference to the nature. of the crime on which Burke was held in custody was to guide the judge in imposing sentence in case Locke was found guilty of aiding or assisting Burke in endeavoring to escape.

## CAVANAUGH'S ASSIGNMENTS OF ERROR.

The defendant Cavanaugh filed eight assignments of error, three of which, numbered 2, 4, and 8, were waived by him in his brief.

The first assignment of error related to the denial of his motion for specifications on the conspiracy indictment. For reasons which we have hereinbefore given, we do not consider this assignment of error. Moreover, the judge who heard the motion denied it as a matter of discretion as he had a right to do.

The third assignment of error relates to an exception

taken by Cavanaugh to the admission of testimony from Miss Cox, a witness for the Commonwealth, regarding a conversation with one Francis, a guard at the jail, who was also a witness for the Commonwealth, in which Francis said, "You have nothing to worry about as long as you do not point anyone out in the court or point any resemblance to anyone. Remember, these are shrewd characters and they have a lot of backing." Francis had previously testified as a witness for the Commonwealth in a manner which, to say the least, was not satisfactory to the prosecuting officer. After the testimony of Miss Cox was allowed to go in the judge instructed the jury as follows: "I instruct you that you may regard that only as bearing on the credibility and the value of the testimony of the witness Francis . . . . There is no evidence that warrants any least inference that Francis' statement to the witness was prompted by these defendants or either one of them, and you will not regard it as being the groundwork or any basis for any least inference of guilt against the defendants or either one of them. They are not responsible, in so far as the evidence goes, for any statement that Francis may have made. As a matter of fact, as far as the evidence goes, they may not even know that he was here or made the statement." The effect of these full and complete instructions, and it must be assumed that the jury followed them, was enough to remove any possible prejudice against Cavanaugh and his codefendant Locke, *Commonwealth* v. *Festo,* 251 Mass. 275, 279, so that there was no prejudicial error in admitting this testimony.

Cavanaugh's fifth assignment of error was to the admission of copies of two warrants of commitment to jail. Each warrant is frequently called a mittimus. In one warrant it appeared that Cavanaugh was committed to jail in default of bail on the charge of unarmed robbery and in the other at a later time in default of bail on the charge of larceny of an automobile. At the time the first of these warrants was offered and admitted the judge instructed the jury as fol-

lows: "I will instruct you that it is admitted solely for the limited purpose of showing that Cavanaugh was committed . . . [to said jail] and was there during the time that these offences are alleged to have taken place. You will not draw any inferences of guilt, however slight, from the fact that he is charged with a certain offence there and that bail was set in a certain amount. It merely shows that he was sent to . . . jail to await trial. When he is tried, he might be found not guilty, so you will draw no inferences of any kind against him from the mere fact that the mittimus describes a crime or names a crime and recites an amount of bail." The judge in substance repeated his instructions when the other warrant was offered and admitted. As we have already said in relation to the third assignment of error, the instructions of the judge were enough to remove any prejudice against Cavanaugh which might have been created if the purpose of introducing the "mittimuses" had remained unexplained. There was no prejudicial error in admitting the "mittimuses" for the limited purpose for which they were received.

The sixth assignment of error was based upon exceptions to questions put to Cavanaugh on September 21, 1954, at the Boston police headquarters by Captain Wilson of the Boston police in the presence of one Shanahan, a police stenographer, who made a typewritten transcript of the questions and answers. Cavanaugh in answer to questions said that he had $992 on his person. It appeared from other testimony that when arrested on August 1, 1954, he had only forty cents in change on his person.

There was evidence that Cavanaugh and Burke were in frequent communication while they were in jail together, particularly while they were in the yard exercising. On one occasion Cavanaugh sent another inmate to talk with Burke to "[f]ind out what he wants us to do and the address and about the location of the money, where the money is." This other inmate went over to where Burke was and lay down on the grass beside him for a while. When the inmate returned he had a piece of paper in his hand which he gave

to Cavanaugh who put it in his pocket. This happened roughly about a month before Burke escaped.

The fact that Cavanaugh had $992 in his possession a little over three weeks after Burke escaped when he had practically no money a few weeks before had relevancy to show involvement of Cavanaugh in the escape. Indeed the payment of money to Cavanaugh by somebody with whom Burke apparently told Cavanaugh where and how to get in touch, may well have been the motivating cause of Cavanaugh's efforts in assisting Burke to escape. See *Commonwealth* v. *Caruso*, 251 Mass. 362, 367. See also Wigmore, Evidence (3d ed.) § 26 and § 32 (at p. 420) and § 154; McCormick, Evidence, § 152.

It was said in *Commonwealth* v. *Feci*, 235 Mass. 562, at pages 566–567, "Although motive is no part of the offence charged and the Commonwealth is not obliged in any case to prove a motive for murder, yet evidence tending to show a motive is always competent because, if clearly shown, it may help to confirm the conclusion reached from all the other evidence that the accused has committed the offence charged."

The defendant Cavanaugh's seventh assignment of error relates especially to evidence that Cavanaugh and one Dieferio, who was a codefendant in the conspiracy indictment, were together when both were arrested on charges other than those in the instant case. This evidence had relevancy only on the conspiracy indictment and as we have said we do not consider it for reasons hereinbefore given.

*Judgments affirmed.*