Ecclesiastes 3:1, Inc. *vs.* Cambridge Savings Bank
& others[1]
(and a companion case[2]).

Suffolk.  May 19, 1980. — August 7, 1980.

Present: Brown, Greaney, & Perretta, JJ.

*Practice, Civil,* Summary judgment, Affidavit. *Evidence,* Extrinsic affecting writing, Best evidence rule. *Notice. Real Property,* Notice of lease. *Landlord and Tenant,* Notice of lease. *Estoppel.*

In an action seeking a declaration that the plaintiff held an unencumbered freehold in certain premises by reason of its acquisition at a sheriff's sale of a lessee's interest in the unexpired term of a purported 100-year lease, there was no merit to the plaintiff's contention that statements in the defendant's affidavits in support of their motion for summary judgments, with respect to the intention of the parties which executed a notice of lease, the meaning and effect of an ambiguous subordination agreement that was recorded, and historical facts as to a bank's mortgage on the property should have been struck because they contained material which would not have been admissible at trial. [380-381]

A judge's finding on a motion for summary judgment that a notice of lease did not take effect as a lease was supported by the provisions of G. L. c. 183, § 4, the terms of the notice itself, and the uncontroverted assertions by the parties to the notice that the document was not intended to constitute the lease. [382-383]

In an action seeking a declaration that the plaintiff held an interest in the unexpired term of a purported 100-year lease, there was no merit to the plaintiff's contention that the defendants should have been estopped from asserting the nonexistence of the lease. [383-384]

Civil actions commenced in the Land Court on October 22, 1976, and February 28, 1977, respectively.

[1] Martin B. Hoffman and Herbert S. Hoffman.  A default judgment was entered in the Land Court as to several other defendants, and no appeal has been taken from that judgment.

[2] Ecclesiastes 3:1, Inc. *vs.* Martin B. Hoffman and Herbert S. Hoffman.

The cases were heard by *Randall, J.*

*Philip S. Shaw* for the plaintiff.

*James J. Dillon* for the defendants.

GREANEY, J.   By two separate actions in the Land Court, which were consolidated for hearing and disposition, the plaintiff sought: (a) an order (G. L. c. 237, §§ 1 and 5, as amended by St. 1973, c. 1114, § 227) for possession of certain premises on Forest Street in Cambridge against the defendants Martin B. and Herbert S. Hoffman, who claimed paramount title to the property as grantees under a foreclosure deed from the Cambridge Savings Bank (bank); and (b) a declaration (G. L. c. 231A, § 1) that it held an unencumbered freehold or an estate of fee simple in the premises by reason of its acquisition at a sheriff's sale of the lessee's interest in the unexpired term of a purported 100-year lease.[3]

Forest Realty Trust (trust) acquired the premises on October 15, 1969. Forest Street Housing, Inc. (corporation), was formed on November 20, 1970. The trust and the corporation executed a notice of lease (recorded on December 4, 1970) which stated that the premises were subject to a "lease . . . for a term of 100 years commencing November 20, 1970." By instrument dated January 4, 1971, and recorded, the corporation subordinated its rights in the "lease" to a mortgage given by the trust to David Zussman and Sidney Cohen. On January 12, 1972, the trust mortgaged the property to the Cambridge Savings Bank. On the same date, two subordination agreements were executed by the bank and the parties to the notice of lease. In the first agreement (which was recorded), the trust's interest in the "lease" was subordinated to the mortgage, and the corporation assented to the subordination. In the other agreement (which was not recorded) the corporation's interest in the "lease" was subordinated to the bank's mortgage. By in-

_____

[3] For a discussion of the effects of long-term leases, see G. L. c. 186, § 1; *Stark* v. *Mansfield*, 178 Mass. 76, 81-82 (1901); *Fulgenitti* v. *Cariddi*, 292 Mass. 321, 325 (1935).

strument recorded on May 1, 1972, a tenant at the Forest Street premises attached all the corporation's "right, title and interest" in the real estate. In December, 1974, the trust gave a mortgage to the Hoffmans which was duly recorded. By certificate dated April 28, 1975, and subsequently recorded, the Hoffmans made an entry on the premises for purposes of foreclosing their mortgage. By an unrecorded "indenture" dated May 2, 1975, the corporation "grant[ed] and surrender[ed]" all of its interest in the property to the Hoffmans. In June, 1975, a judgment was obtained in the tenant's suit against the corporation and a levy made on the execution. On August 6, 1975, the tenant's attorney, together with a second lawyer, formed Ecclesiastes 3:1, Inc. (plaintiff). At a sheriff's sale held to satisfy the tenant's judgment, the plaintiff purchased the corporation's interest in the property for a stated price of $2,632.65.[4]  On March 3, 1977, the bank, under the power of sale contained in its mortgage, sold the property to the Hoffmans for $1,208,000. This foreclosure deed was subsequently recorded on March 29, 1977.

Both the plaintiff and the defendants moved for summary judgment. Mass.R.Civ.P. 56(a) and (b), 365 Mass. 824 (1974). The affidavits and materials submitted by the parties with the motions contained the foregoing chronology. In addition, the defendants submitted affidavits from the principals of the trust and the corporation, and their attorney, which stated that the 100-year lease never existed, that the notice of lease was not intended to constitute the lease, and that the notice was recorded to hold "the matter of rent control on the property . . . in place pending resolution of whether a cooperative development [for the property] was possible."[5]  The

---

[4] The execution issued on the underlying judgment for the tenant was in the amount of $825. The execution contains notations that the tenant's attorney received $225 from the corporation in partial satisfaction of the judgment and on August 7, 1975, received from the sheriff who conducted the sale $600 "in full satisfaction of the . . . execution."

[5] See generally the decision in *Huard* v. *Forest St. Housing, Inc.*, 366 Mass. 203 (1974), in which certain questions as to the application of the rent control act to this property are discussed.

plaintiff submitted various documents from rent control proceedings where the corporation represented itself to the Cambridge rent control board as the owner of the premises and the lessee of a 100-year lease.

On these submissions, a judge of the Land Court ruled that "no lease as such was ever executed between [the trust] and [the corporation]"; that "the actual purpose for recording [pursuant to G. L. c. 183, § 4] the notice of lease . . . was to avoid the operation of the Cambridge rent control laws on the Forest Street apartments"; that "the notice of lease . . . is not in itself a lease"; that the corporation "had no title in the premises upon which [a creditor] could levy, [as a result of which] the plaintiff acquired no interest in the premises as purchasers at the . . . sheriff's sale"; that the plaintiff was "on notice that a mortgage to the [bank] predated [the] attachment and that the purported lease had been sought to be subordinated to the mortgage [thus creating] a duty to inquire further"; and that the plaintiff cannot "take advantage of an obvious technical error in the subordination agreement to the detriment of major creditors of . . . [the] trust." Based on these rulings the judge allowed the defendants' motion and entered judgments determining that the plaintiff had no title to the premises and that the Hoffmans were rightfully in possession. We affirm the judgments.

1. The plaintiff moved to strike various portions of the defendants' affidavits on the basis that they contained material which would be inadmissible at a trial. See Smith & Zobel, Rules Practice § 56.6 (1977). The judge properly denied the motion. The statements in the affidavits by the principals of the trust and the corporation and the attorney for both entities that a lease never existed were statements of fact. The assertions that no consideration had been paid by the corporation for the notice of lease, that the notice was not intended as a substitute for the lease, and that the corporation was not intended at any time to be a tenant or owner of the property (but only a development agent) were properly received. The intention of the parties

was a question of fact to be considered by the judge on all the circumstances surrounding the transaction. *Jacobson* v. *Jacobson*, 334 Mass. 658, 661 (1956). *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973). A person "is competent to testify as to his own intent" and in a rule 56 proceeding he may submit an "affidavit [which] shows [what] he did not intend." *Commonwealth Bank & Trust Co.* v. *Plotkin*, 371 Mass. 218, 221 (1976). On this aspect of the motions, the plaintiff was obligated to show that triable issues of fact existed on the question of intent. Compare *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726-727 (1979). It failed in this regard. See *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.*, 8 Mass. App. Ct. 178, 182-183 (1979); *Hahn* v. *Sargent*, 523 F.2d 461, 468 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). Nor did the existence of the notice of lease raise a parol evidence problem with regard to the assertions that a lease never existed. "[T]he defendants attempt not to vary or contradict [the] terms [of an instrument] but, rather, to challenge its very existence. In such a case the parol evidence rule is not applicable." *Porreca* v. *Gaglione*, 358 Mass. 365, 368-369 (1970). Likewise, it was not improper for the judge to consider the material in the affidavits concerning the meaning and effect of the inartfully drawn subordination agreement that was recorded. The subordination was sufficiently ambiguous to justify its explanation by extrinsic proof. *Ryan* v. *Stavros*, 348 Mass. 251, 259-260 (1964), and cases cited. *Siegel* v. *Terminal Realty Corp.*, 350 Mass. 779, 780 (1966). See also *Allen* v. *Mutual Acceptance Corp.*, 350 Mass. 553, 557-558 (1966). Contrast *Nourse* v. *Nourse*, 116 Mass. 101, 104 (1874). Finally, the best evidence rule did not apply to the factual recitations concerning the bank's mortgage contained in the affidavit of counsel for the bank. These were recitals of historical fact (as to the dates of the mortgage, its foreclosure and the closing after the foreclosure sale) which did not call for the annexation or production of the underlying documents. See Leach & Liacos, Massachusetts Evidence 263 (4th ed. 1967).

2. The defendants' submissions raised the question of fact that the 100-year lease never existed and that the notice of lease was an artifice to stave off the application of rent control while the feasibility of a cooperative development was studied. The crucial assertion (that there was no lease) shifted to the plaintiff the burden of setting forth specific facts showing that there was a genuine issue for trial. *O'Brion, Russell & Co.* v. *LeMay,* 370 Mass. 243, 245 (1976). *Turner* v. *McCune,* 4 Mass. App. Ct. 864, 865 (1976). The plaintiff chose to evade the issue rather than counter it. It made no assertion that a lease existed. Instead it relied on certain recorded documents, principally the notice of lease, the attachment, the levy and the sheriff's deed, as establishing its superior title to the property as a matter of law. This put the judge in the position of determining from essentially undisputed facts the legal question whether the notice of lease took effect as a lease. His ruling that it did not is supported by: (1) G. L. c. 183, § 4,[6] which makes it plain that a notice of lease is not the lease but only a shorthand reference to it (see *Mister Donut of America, Inc.* v. *Kemp,* 368 Mass. 220, 223-224 [1975]); (2) the notice itself which is not "an instrument [that] upon its face purports to be the contract upon which the occupation is to be enjoyed, and the relations and rights of the parties to be defined, and it [fails to] contain[ ] apt words to operate as a present demise" (*Riedel* v. *Plymouth Redevelopment Authy.,* 354 Mass. 664, 665 [1968]), as well as any of the other attributes of a long-term lease, such as the amount of the rent, conditions of occupancy, options to extend or renew, rights of termination or forfeiture and the like (see Schwartz, Lease Drafting in Massachusetts § 1.4 [1961]);

---

[6] "A 'notice of lease,' as used in this section, shall mean an instrument in writing executed by all persons who are parties to the lease of which notice is given and shall contain the following information *with reference to such lease:* — the date of execution thereof and a description, *in the form contained in such lease,* of the premises demised, and the term of such lease, with the date of commencement of such term and all rights of extension or renewal" (emphasis supplied).

and (3) the uncontroverted assertions by the parties to the notice that the document was not intended to constitute the lease.

3. The plaintiff contends that the defendants should be estopped to assert the nonexistence of the lease. The argument was cryptically raised in the motion to strike portions of the defendants' affidavits. It is unclear whether it was asserted in the arguments on the motions for summary judgment. The judge's memorandum does not discuss the question, and there was no request made by the plaintiff to supplement that memorandum or the declaration in any respect. See *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 724 (1976); *Gerber* v. *Ty-Data, Inc.,* 5 Mass. App. Ct. 898, 898-899 (1977); *Bendetson* v. *Coolidge,* 7 Mass. App. Ct. 798, 804-805 (1979). Nevertheless, we do not think that the plaintiff has demonstrated that a triable issue of fact exists on the question. There can be no estoppel by deed where there is no deed. See *Nourse* v. *Nourse,* 116 Mass. at 104. As to an estoppel in pais, "[t]he basis of an estoppel is a representation . . . intended to induce a course of action on the part of the person to whom the representation is made, and where, as a consequence, there is detriment to the person relying on the representation and taking the action." *Capozzi's Case,* 4 Mass. App. Ct. 342, 347 (1976), quoting from *DeSisto's Case,* 351 Mass. 348, 351-352 (1966). *Cellucci* v. *Sun Oil Co.,* 2 Mass. App. Ct. 722, 728 (1974), *S.C.,* 368 Mass. 811 (1975). "But the doctrine of estoppel is not applied except when to refuse it would be inequitable. 'The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate.'" *Delaware & Hudson Co.* v. *Boston R.R. Holding Co.,* 328 Mass. 63, 80, cert. denied, 343 U.S. 920 (1951). The claim of estoppel fails as a matter of law because the plaintiff has not asserted anywhere in its affidavit that it placed reliance on any representation made to it by the bank or the Hoffmans or that it incurred a significant detriment as a result of anything that these defendants did or failed to do. The state of the record

title was such that the bank's mortgage clearly appeared to be the senior encumbrance. Any prudent and objective conveyancer would have advised a prospective purchaser at the sheriff's sale to inquire as to the status of the bank's mortgage, the status and undisclosed terms of a lease of such uncommon dimension, and the effect of the various subordination agreements. Moreover, the prospective purchaser of the lessee's interest has as great a need to know the terms and conditions of the lease which did not appear on record (especially the provisions governing rent, conditions of occupancy, and forfeiture) as does the purchaser of the lessor's interest, who is expected to "fully protect himself by examining the original lease or by consulting the lessee." *Mister Donut of America, Inc.* v. *Kemp,* 368 Mass. at 224. While someone who is acquiring the lessee's interest can usually rely on a recorded notice of lease as reflecting the existence of the underlying lease, the obligation remains, if the purchaser wishes to protect himself against undisclosed rights held by the parties to the lease (particularly where the lease is linked to a recorded subordination agreement), to make inquiry of the seller and the lessee to ascertain the contents of the lease. See *Snyder* v. *Sperry & Hutchinson Co.,* 368 Mass. 433, 439 (1975). See also *Cunningham* v. *Pattee,* 99 Mass 248, 252 (1868), as explained in *Toupin* v. *Peabody,* 162 Mass. 473, 478 (1895); Davis, Massachusetts Conveyancers' Handbook § 22 ( 2d ed. 1967). An inquiry at the time of the sheriff's sale would have led to the discovery that the bank's mortgage was paramount. Confining ourselves to the problem as one concerning the appropriateness of the case for summary judgment, we conclude that deliberate risk taking by the plaintiff's principals bars its reliance on the doctrine of estoppel.

*Judgments affirmed.*