SULLIVAN, J.
*947 *217 In November, 2009, Green Tree Servicing, LLC (Green Tree), foreclosed on Henrietta Eaton's home, exercising the power of sale contained in her mortgage. Green Tree, acting as servicer for Federal National Mortgage Association (Fannie Mae), offered the highest bid at the auction. As Green Tree's assignee, Fannie Mae purchased the property and then brought an eviction action in Housing Court. On the theory that the foreclosure was void because Green Tree did not hold the mortgage note at the time of the foreclosure sale, Eaton brought her own declaratory judgment action in Superior Court and obtained a preliminary injunction against the eviction, an injunction which resulted in the Supreme Judicial Court's oft-cited opinion in Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 969 N.E.2d 1118 (2012) ( Eaton I ).[3]
After the remand in Eaton I, the Housing Court matter was transferred to the Superior Court and the two cases were consolidated. In September, 2016, on cross motions for summary judgment, a Superior Court judge entered judgment for Fannie Mae and Green Tree in the consolidated case.
Eaton now appeals, making three arguments. First, she claims a genuine issue of fact exists regarding the physical possession of her promissory note at the time of the foreclosure. Second, she asserts that a preforeclosure right to cure notice sent by Fannie Mae's predecessor, BankUnited, FSB (BankUnited), did not strictly comply with the terms of her mortgage, as required by *218 Pinti v. Emigrant Mort. Co., 472 Mass. 226, 33 N.E.3d 1213 (2015).[4] Third, Eaton contends that a question of fact exists as to BankUnited's authority to send *948 the right to cure notice. We vacate the judgment on the narrow issue of BankUnited's authority to send the right to cure notice, and affirm the judgment in all other respects, albeit on somewhat different grounds.
Background. The general background of the case is set forth in Eaton I, which, as we have noted, considered the grant of a preliminary injunction. We recite the facts from the summary judgment record, reserving certain additional facts for later discussion.
Eaton signed the original note payable to BankUnited on September 12, 2007. On or about October 1, 2007, Fannie Mae purchased a pool of loans from BankUnited, including Eaton's loan. Eaton defaulted, and BankUnited sent her a right to cure notice dated November 14, 2008. In November of 2009, Green Tree, which had been made Fannie Mae's servicer, conducted the foreclosure auction that resulted in this litigation.
Discussion. Our review of the allowance of summary judgment is de novo, "because we examine the same record and decide the same questions of law" as the motion judge. Kiribati Seafood Co., LLC v. Dechert LLP, 478 Mass. 111, 116, 83 N.E.3d 798 (2017). And, given that "both parties have moved for summary judgment, [we view] the evidence ... in the light most favorable to the party against whom judgment is to enter." Albahari v. Zoning Bd. of Appeals of Brewster, 76 Mass.App.Ct. 245, 248 n.4, 921 N.E.2d 121 (2010).
1. Physical possession of the note at the time of foreclosure. In Eaton's view, Fannie Mae must demonstrate that there is no dispute of fact that it had physical possession of the note at the time of the foreclosure.[5] See Eaton I, 462 Mass. at 571, 969 N.E.2d 1118 (construing "mortgagee" as used in certain foreclosure-related statutes as "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder"). Citing Eaton I, 462 Mass. at 571 & n.2, 969 N.E.2d 1118, Fannie Mae disagrees, stating that *219 it is enough for it to have "owned" the note, regardless of whether it physically possessed the note, where Green Tree was an authorized servicer, acting on behalf of Fannie Mae. Thus, says Fannie Mae, any factual dispute over physical possession of the note is immaterial. The motion judge agreed, and, on this basis, declined to determine whether there were facts in dispute as to whether Fannie Mae had physical possession of the note at the time of the foreclosure. As a result, the judge ruled in favor of Fannie Mae and Green Tree on the basis that Fannie Mae was the owner of the note at the time of foreclosure, and Green Tree was its agent.
We decline to reach the "ownership" issue because Fannie Mae has provided competent evidence that it had physical possession of the note at the time of the foreclosure, while Eaton has offered no countervailing evidence.[6] Specifically, Fannie Mae submitted the affidavits of Ana Barajas, a senior associate for its document custodian, The Bank of New York Mellon Trust Company, N.A. (BNYM), *949 and Michael Ann Williamson, a vice president in Green Tree's document custody department. Both affidavits recite that they are based upon personal knowledge and review of the business records kept in the usual course of business by each affiant's respective employer.
Barajas avers that BNYM served as document custodian for certain Fannie Mae mortgage loans. The affidavit states that BNYM received Eaton's note from Fannie Mae on or about July 10, 2009-before the foreclosure. BNYM retained physical custody of the note from that date until October 4, 2013, when the note was sent to Green Tree.
The Williamson affidavit authenticates the custodial agreement between Fannie Mae and BNYM,[7] as well as a redacted list of mortgage loans. That list identifies Eaton's note (by loan number) as one of those as to which BNYM agreed to take custody. Williamson, on behalf of Green Tree, states unequivocally that *220 BNYM sent the note to Green Tree on October 4, 2013.[8]
Eaton counters that the Barajas and Williamson affidavits are not competent to show that BNYM had physical possession of the note in October and November of 2009, because they are not based on personal knowledge and violate the best evidence rule. We disagree. The affidavits satisfy the personal knowledge requirement of Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). They are submitted by individuals employed by the relevant parties, attest to the transfer of the note from Fannie Mae's custodian, BNYM, to its new servicer, Green Tree, and are based on a review of the business records of each entity. "The affidavit[s] [were] made on the basis of personal knowledge of the ... practices of the parties as well as a review of business records and it was sufficient." First Natl. Bank of Cape Cod v. North Adams Hoosac Sav. Bank, 7 Mass.App.Ct. 790, 791, 794, 391 N.E.2d 689 (1979).[9]
Moreover, the best evidence rule-that an original writing or record is required in order to prove its content, see Mass. G. Evid. § 1002 (2017)-is inapplicable here. "[A]part from the contents of a writing[,] [the best evidence] rule does not require that a fact be proved in only one way." Commonwealth v. Locke, 338 Mass. 682, 687, 157 N.E.2d 233 (1959). Fannie Mae's affidavits are not offered to prove the content of any document. Contrast Khalsa v. Sovereign Bank, N.A., 88 Mass.App.Ct. 824, 824-826, 44 N.E.3d 863 (2016). Rather, they are offered to prove the physical location of the note at a particular time. See Ecclesiastes 3:1, Inc. v. Cambridge Sav. Bank, 10 Mass.App.Ct. 377, 381, 407 N.E.2d 1318 (1980).
Eaton's argument reduces to the contention that first-hand knowledge must be demonstrated by either a first-hand account of the individual who received the *950 note from BankUnited, or production of other contemporaneous documentation. For the reasons stated, Fannie Mae's affidavits were sufficient to demonstrate that it had physical possession of the note at the time of the foreclosure. At that juncture, Eaton was required to offer affidavits or other record *221 evidence setting forth specific facts showing that the absence of contemporaneous documentation created a genuine issue of material fact as to possession of the note during the relevant time period. See Mass.R.Civ.P. 56(e). However, Eaton offered no evidence that the lack of contemporaneous documentation violated Fannie Mae policy, industry practice, or legal or regulatory requirements, or was in some other way suspect at the time the note was sent to BNYM. In these unique circumstances, Eaton's "bare assertion[s]" are insufficient to raise a genuine issue of material fact.[10] See Community Natl. Bank v. Dawes, 369 Mass. 550, 559, 340 N.E.2d 877 (1976). Because the Barajas and Williamson affidavits meet the requirements of rule 56(e), summary judgment for Fannie Mae and Green Tree was properly granted with respect to Eaton's claim that the foreclosure did not comply with the requirements of Eaton I.
2. Strict compliance with paragraph 22. Next, Eaton contends that BankUnited's November 14, 2008, right to cure notice did not strictly comply with paragraph 22 of Eaton's mortgage. See Pinti, 472 Mass. at 227, 33 N.E.3d 1213. Paragraph 22 of Eaton's mortgage requires that a notice be sent prior to acceleration of her debt. The paragraph provides, in pertinent part:
"The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property."
Paragraph 22 also requires that "[t]he notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."
In Pinti, supra, the Supreme Judicial Court held that the provisions of paragraph 22 of Fannie Mae's uniform home mortgage[11] *222 "constitute 'terms of the mortgage' governing the power of sale," as that phrase is used in G. L. c. 183, § 21, and, accordingly, a valid foreclosure requires strict compliance "with paragraph 22's notice of default provisions." Id. at 240, 33 N.E.3d 1213.
BankUnited's notice complied with paragraph 22 insofar as it listed the amount of the default, stated that the default could be cured by paying that amount, and provided a deadline of February 12, 2009, for curing the default-more than thirty days after the date of the notice. The notice further stated, "If the default is not cured by February 12, 2009, BankUnited may take steps to terminate your ownership in the property by a foreclosure proceeding *951 or other action to seize your home."[12] Unlike the notice at issue in Pinti,[13] Eaton's notice did not incorrectly suggest that BankUnited would be required to bring a court action in order to foreclose-which Eaton would then have an opportunity to defend. Instead, it stated clearly: "[Y]ou have the right to ... bring a court action to assert the non-existence of a default or any other defense to acceleration or sale."
Eaton argues, however, that the notice did not sufficiently convey that a failure to cure the default could result in a "sale of the Property." Pinti requires that the mortgagee "send[ ] a notice that conforms to the language of the paragraph." 472 Mass. at 238, 33 N.E.3d 1213. It does not require that the notice quote word for word from the mortgage. Here, the notice stated that if the default were not cured, BankUnited might "take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the home." The language strictly complies with paragraph 22.
3. BankUnited's authority to send the paragraph 22 notice. Eaton fares better with her argument that a genuine issue of fact exists as to whether BankUnited was authorized to send the *223 paragraph 22 notice in the first place.[14]
Paragraph 22 requires the "Lender" to give the borrower notice of the right to cure. Eaton claims that under Eaton I and Pinti, supra, a paragraph 22 notice is valid only if it is sent by the "Lender" or its agent, and the "Lender" necessarily must be the note holder because the note holder is the only entity that can authorize an exercise of the power of sale. See Pinti, 472 Mass. at 227, 33 N.E.3d 1213. See also Eaton I, 462 Mass. at 571, 969 N.E.2d 1118, citing G. L. c. 183, § 21, and G. L. c. 244, § 14, as then in effect. Therefore, Eaton contends, because the "Lender" is the only entity that has the authority to send the paragraph 22 notice, "strict compliance" with the terms of paragraph 22 means that notice must be sent by the "Lender" or its agent. See Pinti, supra. See also Eaton I, supra. Thus, she claims, summary judgment could not be awarded to Fannie Mae without a showing that BankUnited was either the note holder or acted on behalf of Fannie Mae as note holder when it sent the paragraph 22 notice in November, 2008.
On appeal, Fannie Mae makes no argument as to whether proof is required that either it or BankUnited had physical possession of the note at the time the notice to cure was sent. Nor does Fannie Mae argue *952 that it or BankUnited was the noteholder at that time. Instead, Fannie Mae relies solely on BankUnited's purported authority as its servicer to send the notice.[15] Fannie Mae has not, however, provided competent evidence that BankUnited acted as its agent in sending the notice.
In the summary judgment proceedings, Fannie Mae relied on the affidavit of Thomas Clark, a foreclosure manager for Green Tree. Although Clark's affidavit states that it is made on behalf of Fannie Mae as well as Green Tree, he does not allege that he worked for either Fannie Mae or BankUnited at any time. And, while he claims to have personal knowledge of the facts in question, *224 there is no basis in the affidavit to establish personal knowledge of the facts at the time that BankUnited sent the notice.[16] Nor does it appear that he "would have been competent to testify to any of the[se] critical matters at trial." Stanton Indus., Inc. v. Columbus Mills, Inc., 4 Mass.App.Ct. 793, 794, 344 N.E.2d 199 (1976).
Even if we were to consider the affidavit, it fails to establish that there is no dispute of material fact as to BankUnited's agency relationship with Fannie Mae and BankUnited's authority to foreclose. The affidavit states that after Eaton's loan closed in September, 2007, "BankUnited serviced the Loan." However, although Clark states that he reviewed Green Tree's business records, he does not aver that those records contained a servicing agreement between BankUnited and Fannie Mae, or that the records contained any other document granting BankUnited authority to foreclose. Moreover, during discovery, Fannie Mae declined to produce a written servicing agreement between BankUnited and Fannie Mae. Nor did Fannie Mae provide any other evidence that it had authorized BankUnited to send the right to cure notice. Accordingly, Fannie Mae's evidence on authority was woefully short of what is required by Mass.R.Civ.P. 56(e). See Khalsa, 88 Mass.App.Ct. at 828-829, 44 N.E.3d 863.
Conclusion. So much of the judgment as ruled against Eaton on her claim that the foreclosure was invalid because the paragraph 22 notice was not authorized by the note holder is vacated, and the matter is remanded for further proceedings consistent with this opinion.[17] In all other respects, the judgment is affirmed.
So ordered.

In Eaton I, the Supreme Judicial Court concluded that, "where a mortgagee acts with the authority and on behalf of the note holder, the mortgagee may comply with the[ ] statutory requirements [governing mortgage foreclosure by sale] without physically possessing or actually holding the mortgage note." 462 Mass. at 589, 969 N.E.2d 1118. The court vacated the preliminary injunction and remanded the matter to the Superior Court for further proceedings, to include an opportunity for Eaton to "establish[ ] that, at the time of the foreclosure sale, Green Tree neither held the note nor acted on behalf of the note holder." Id. at 590, 969 N.E.2d 1118.

Although Eaton's right to cure notice was sent long before the Pinti decision issued on July 17, 2015, Eaton's Pinti argument was raised in the trial court before that case was decided. The issue is therefore properly before us. See Federal Natl. Mort. Assn. v. Marroquin, 477 Mass. 82, 88-89, 74 N.E.3d 592 (2017).

Green Tree's notice of foreclosure sale, sent to Eaton pursuant to G. L. c. 244, § 14, is dated October 5, 2009. The sale was advertised by newspaper publication on October 13, 20, and 27, 2009, and was held on November 4, 2009.

As an appellate court, we are free to affirm on grounds different from those relied on by the motion judge. See Balles v. Babcock Power Inc., 476 Mass. 565, 579 n.21, 70 N.E.3d 905 (2017).

Although Eaton claims that Green Tree has no first-hand knowledge of the Fannie Mae-BNYM custody agreement, we are satisfied that Green Tree's document custody officer was competent to provide an affidavit authenticating the agreement.

Eaton acknowledges that Fannie Mae remained the "holder" of the note while the instrument was kept by Fannie Mae's document custodian, BNYM. During discovery the note was produced and Eaton was given the opportunity to inspect it.

Khalsa v. Sovereign Bank, N.A., 88 Mass.App.Ct. 824, 44 N.E.3d 863 (2016), upon which Eaton relies, is distinguishable for two reasons. First, no affidavit based on first-hand knowledge was brought to the attention of the motion judge in Khalsa. Id. at 831, 44 N.E.3d 863 n.9. Second, Khalsa concerned the agency relationship between lender and servicer, not the physical location of the note, and it was the facts concerning agency that were in dispute. See id. at 824-827, 44 N.E.3d 863.

If there was such evidence in the voluminous record, it was not brought to the attention of the judge or this court. See Khalsa, 88 Mass.App.Ct. at 831 n.9, 44 N.E.3d 863.

Eaton's mortgage states on its face that it is Fannie Mae's uniform mortgage instrument for Massachusetts single family homes. The mortgage at issue in Pinti was also "the standard form mortgage provided by ... (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac)." Pinti, 472 Mass. at 236 n.16, 33 N.E.3d 1213.

The notice also contained several lines of odd computerized coding, similar versions of which were repeated in various places in the document. This enigmatic coding was obviously included in error. Although this is far from ideal, we agree with the motion judge that the strange coding did not obscure the text that was required to strictly comply with paragraph 22.

In Pinti, the notice of default stated that the mortgagors had "the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense [they] may have to acceleration and foreclosure and sale." 472 Mass. at 229, 33 N.E.3d 1213.

The motion judge concluded that Eaton waived this argument because she failed to raise it before the hearing on the motion for summary judgment. Eaton, however, made this argument both in a motion to compel and a supplemental brief in connection with the summary judgment motion, both filed with permission and served on Fannie Mae before the hearing. Fannie Mae responded in its own supplemental brief and there was lengthy discussion by both counsel on the topic during the oral argument. The issue was preserved. And because the matter comes before us on a motion for summary judgement, where our review is de novo, we may decide the question of law presented. See Kiribati Seafood Co., LLC, 478 Mass. at 116, 83 N.E.3d 798.

Fannie Mae's brief states, "Fannie Mae (through its then-servicer, BankUnited) complied with paragraph 22 of the Mortgage ...."

The affidavit also states that servicing rights for the loan were not transferred from BankUnited to Green Tree until April 1, 2009, some four and one-half months after the right to cure notice was sent.

We decline to reach Eaton's argument that Fannie Mae must demonstrate that it physically held the note at the time the right to cure notice was sent, and Fannie Mae's counter argument that ownership is all that is required. We do so not on the merits, and not because of any failure on the parties' part to preserve or adequately argue the issue, but because the question may become moot if, on remand, Eaton prevails at summary judgment on the question whether Fannie Mae had an agency relationship with BankUnited at the time the notice was sent. If the question of physical possession versus simple ownership is not moot, the parties may readdress these issues on remand.